# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LORRE MADISON,

      Plaintiff,

vs.

HOPE NETWORK BEHAVIORAL
HEALTH SERVICES,
a Michigan non-profit corporation,

      Defendant.

Civil Action No.:

HON.

---

Bradley K. Glazier (P35523)
Robert M. Howard (P80740)
BOS & GLAZIER, P.L.C.
Attorneys for Plaintiff
990 Monroe Avenue, N.W.
Grand Rapids, MI 49503
(616) 458-6814

---

## COMPLAINT AND JURY DEMAND

Plaintiff, Lorre Madison, by her counsel, Bos & Glazier, P.L.C., states as follows as her Complaint against defendant Hope Network Behavioral Health Services ("Hope Network"):

## JURISDICTIONAL ALLEGATIONS

1. This is an action brought for defendant's violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*

2. This court has subject matter jurisdiction over plaintiff's FMLA claims pursuant to 28 U.S.C. § 1331, as those claims arise under the laws of the United States.

3. Plaintiff, Lorre Madison, is a citizen of the United States and the State of Michigan. She resides in Kent County. Madison was an employee of Hope Network.

4. Defendant Hope Network is a Michigan non-profit corporation with several facilities. The one where plaintiff worked is located at 1441 52nd Street SE, Kentwood Michigan.

5. Plaintiff was employed by defendant for at least 12 months prior to the leave of absences that led to her termination and worked at least 1,250 hours of service for defendant during the 12 months preceding her leave request. As such, plaintiff was an "eligible employee" pursuant to 29 U.S.C. § 2611(2).

6. Defendant employed 50 or more employees at the facility where plaintiff worked or 50 or more employees within 75 miles of plaintiff's work site during each of 20 or more calendar work weeks in the previous calendar year and was an "employer" as defined under the FMLA, pursuant to 29 U.S.C. § 2611(4).

7. The events giving rise to this cause of action occurred in the Western District of Michigan.

**GENERAL ALLEGATIONS**

8. Madison began her employment with Hope Network in 2017. Madison worked as an assistant program manager.

9. Hope Network provides services related to mental health in a variety of settings.

10. As an assistant program manager, Madison cared for young adults in a residential program. Her duties included preparing meals, housework, passing medications, and updating medical charts. Most of the residents were mentally challenged.

11. Madison consistently worked overtime in her position.

12. In July 2020, Madison was given an annual evaluation. In the ten categories, Madison met expectations three times and exceeded expectations seven times.

13. In the "dependability" evaluation, the evaluator stated that "Lorre has always been on time. She comes in when staffing is needed and she stays late if there is a call in or a no call no show." (Exhibit 1).

14. On or about October 15, 2020, Madison requested FMLA leave for a serious health condition.

15. Madison's medical provider completed a FMLA medical certification for Madison on October 28, 2020. (Exhibit 2).

16. The completed certification was provided to Hope Network's third party administrator BASIC.

17. The completed certification listed the approximate date the condition commenced as October 15, 2020, and the probable duration of the condition as two weeks (*Id.*).

18. The leave was approved by BASIC and Hope Network.

19. On October 26, 2020, Madison required a two-week extension to her leave, until November 11, 2020. (Exhibit 2). Her medical provider approved this extension and provided Madison with an updated medical certification. This amended certification was on the same form and included a new end date of 11/11/20 with the provider's initials.

20. On October 29, 2020, BASIC contacted Madison regarding her leave. BASIC stated that additional information was required to approve her leave. (Exhibit 3). The deadline for submitting the updated form was listed as November 18, 2020.

21.     On November 6, 2020, Terri Brower, Hope Network's disability and leave of absence manager requested information from BASIC regarding Madison's pending leave request. (Exhibit 4). BASIC sent Brower the updated medical certification in response. (*Id.*).

22.     On or about November 10, 2020, Brower spoke with Madison. Madison stated that she had an appointment with her doctor on November 12, 2020 regarding extending her leave. When Madison arrived on November 12, the doctor's office was unexpectedly closed.

23.     On November 15, Madison called her supervisor Tmnit Mogos to provide an update on her leave. Mogos did not answer, so Madison left Mogos a voicemail regarding that status of her FMLA leave.

24.     On November 16, 2020, Hope Network sent a letter to Madison titled "5 day notice." (Exhibit 5). The letter stated that Hope Network had unsuccessfully attempted to contact Madison from November 10 to November 16. (*Id.*). The letter stated that Madison had until Friday to contact Hope Network. (*Id.*).

25.     On November 17, 2020, Michael Hardiman, a Hope Network human resources generalist, requested information from Brower. Brower told Hardiman that he had spoken with Madison on November 10 about her medical appointment scheduled for the next day. (Exhibit 6).

26.     Madison's care provider updated the medical certification again on November 18, 2020.  The updated medical certification changed the probable duration of the serious health condition from 2 weeks to 12 weeks.  It also added additional medical facts and identified the new leave period as October 26, 2020 to January 26, 2021. (Exhibit 7).

27. On November 18, 2020, BASIC sent Madison a letter that stated BASIC has approved her FMLA leave on behalf of Hope Network from October 26, 2020 to January 15, 2020. (Exhibit 8).

28. On November 19, 2020, Madison sent a text message to her supervisor Tmnit Mogos about the letter she received and asking if there was anything else she needed to do. (Exhibit 9).

29. Mogos told Madison that her FMLA leave ended on November 11. Mogos stated that her absence on November 12 was excused due to her known doctor's appointment. (*Id.*).

30. On November 20, 2020, Brower requested information from BASIC on Madison's leave status. (Exhibit 10). BASIC provided Brower with its leave approval letter to Madison. (Exhibit 8).

31. Also on November 20, 2020, Mogos described a text exchange she had with Madison requesting Mogos to contact Hope Network's Human Resources Department. The e-mail chain also includes an e-mail from Andrew Davenport to "Everyone" stating: "Does ADA still apply while further documentation is being gathered? Can FMLA be retroactive? If documentation received states hypothetically that she goes back on FMLA on Tuesday (11/17) are we not in violation of the ADA when we look at the no call no show policy?" (*Id.*). (Exhibit 11).

32. Also on November 20, 2020, Madison called Michael Hardiman, the HR generalist who sent Madison the "5 day notice." Hardiman did not answer so Madison left him a voicemail.

33. Madison continued to remain on FMLA leave to treat her serious health condition because BASIC had confirmed that her requested leave had been approved.

34. On December 2, 2020, Hope Network notified Madison that she was terminated. (Exhibit 12). The reason given was her absences on November 12, 13, 14, and 16 and her alleged failure to "engage in the interactive FMLA process." (*Id*.).

35. Madison has been harmed by the actions and inactions of Hope Network.

**COUNT I**
**INTERFERENCE WITH RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT - TERMINATION RESULTING FROM MEDICAL LEAVE OF ABSENCE**

36. Plaintiff incorporates by reference paragraphs 1 through 35 as fully set forth herein.

37. Plaintiff suffered from a "serious health condition" requiring continuing treatment from a health care provider as defined in 29 U.S.C. § 2611(11).

38. Plaintiff was entitled to 12 weeks of unpaid leave of absence to care for her serious health condition as described in 29 U.S.C. § 2612(a)(1)(D).

39. Defendant was aware of plaintiff's need for leave and absences.

40. Defendant's FMLA administrator approved plaintiff's leave.

41. Defendant disciplined the plaintiff and terminated the plaintiff for absences that were protected absences under the term of the FMLA.

42. An employer interferes with an employee's FMLA rights when the employer terminates an employee for an absence or absences that are due to the employee's serious health condition.

43. Defendant's actions interfered with plaintiff's rights under the FMLA, regardless of defendant's intent.

44. Plaintiff suffered damages as the direct result of defendant's violations of the FMLA, including lost wages and fringe benefits. Plaintiff's FMLA protected absences led to formal discipline against the plaintiff and were considered by defendant when it terminated the plaintiff and the discipline led to the plaintiff's termination.

## COUNT II
## FMLA RETALIATION - TERMINATION FOR EXERCISING FMLA RIGHTS

45. Plaintiff incorporates by reference paragraphs 1 through 44 as fully set forth herein.

46. Plaintiff was engaged in a statutorily protected activity when she requested FMLA leave due to her serious health condition.

47. Defendant had actual notice of plaintiff's need for FMLA-protected absences

48. Defendant terminated plaintiff because of plaintiff's protected activity.

49. Plaintiff has sustained damages as a result of defendant's retaliation against her for the exercise of her protected FMLA activity.

WHEREFORE, plaintiff, Lorre Madison, respectfully requests this court to enter a judgment in her favor and against defendant as follows:

A.  Legal Relief

  (1)  Compensatory damages in whatever amount she is found to be entitled;

  (2)  Liquidated damages equal to the amount of compensatory damages awarded; and

  (3)  An award of interest, costs, and reasonable attorney fees and expert witness fees.

B. Equitable Relief

(1) An order reinstating plaintiff to her former position with defendant or a comparable position if her former position is no longer available; or an award of front pay if reinstatement is no longer feasible;

(2) An injunction prohibiting any further acts of wrongdoing, discrimination, or retaliation; and

(3) Whatever other equitable relief appears appropriate at the time of final judgment.

BOS & GLAZIER, P.L.C.
Attorneys for Plaintiff

Date: January 20, 2022          By:   */s/ Bradley K. Glazier*
                                      Bradley K. Glazier (P35523)
                                      Robert M. Howard (P80740)

BUSINESS ADDRESS:
990 Monroe Avenue, N.W.
Grand Rapids, Michigan 49503
(616) 458-6814

**JURY DEMAND**

Plaintiff, Lorre Madison, by her counsel, Bos & Glazier, P.L.C., requests a trial by jury.

                                            BOS & GLAZIER, P.L.C.
                                            Attorneys for Plaintiff

Date: January 20, 2022        By:   */s/ Bradley K. Glazier*
                                                    Bradley K. Glazier (P35523)
                                                    Robert M. Howard (P80740)

                                            BUSINESS ADDRESS:
                                              990 Monroe Avenue, N.W.
                                              Grand Rapids, MI 49503
                                              (616) 458-6814